Early cases, numbers 21-1582 and 21-1961, H.C. v. New York City Department of Education, NMD v. New York City Department of Education, Mr. Kopp. Thank you, Your Honor. May it please the court. Obviously, we will not be able to discuss each case in extreme detail today. However, the appellants would like to start by noting that the substantive claims and the specific reductions discussed in these cases are well briefed, and we would like to ensure that the court is able to look at those in due course. And specifically with M.H.'s substantive claims here that go to the implementation of IHO's final decision, we do want to note this is particularly illustrative for the standpoint of what happens to several of these parents and is very illustrative of the hardships that these parents are going through even after these hearings move about. More broadly, the appellants would like to address the abuses of discretion that went through unreasonable protraction issues, the retrospective review of fee applications below, the absence of lodestar calculations, the not accounting for delay, and the non-application of substantial justification standards. As the IHO for DP's case had noted, these cases are not typically about money. They are about the profound duty of care that both sides owe to children with disabilities. This is about ensuring that needs are being met for these children and that appropriate progress is being made in light of their circumstances. This is about being able to help families and school districts move forward in their dealings with one another and ensuring the expedient conclusion of disputes so that these children are able to have a proper education at the appropriate time. The extraordinary results that have been able to be awarded in several of these cases are really able to make the difference between independent living and institutionalization for many of these children. This is especially true for what is going to end up happening when, as with several of these cases, you have denials of a free appropriate public education. Not just for one school year, but often two or three school years. But that is to say that the litigation is important, which it's important. But where's the abuse of discretion on the part of the district courts in awarding the fees? Well, your honor, part of this is, for one, going with the unreasonable protraction argument. The courts were supposed to look at this from the standpoint of, for instance, subsection G, which has a prohibition. Can I ask about this statute? So it's true, right? Subsection F says there's a mandatory reduction when the fees are not consistent with the prevailing rates of the community and other factors. And then G says, well, you don't have this mandatory reduction when there's unreasonable protraction. But subsections B and C say that the rates have to be reasonable and the rates have to be in accordance with the rates prevailing in the community. So even if there's unreasonable protraction, don't the district courts have an obligation under subsections B and C to ensure that the rates are consistent with community rates and are reasonable? Well, your honor, that's the Farrow decision that this court had handed down a few years ago. The court has to review the statute in light of the other terms of the statute. So subsection B starts off by saying that these are the parties who are going to be able to get reasonable attorney's fees. And then the other subsections say, okay, here's what a reasonable fee looks like. And all of the courts below have essentially said that, okay, we recognize that subsection C, for instance, says that the rates have to be based on what's prevailing in the community. The subsection F starts to say, okay, well, it may be based on the rates in the community, but if you're going beyond that, then F requires the reduction if you are going unreasonably beyond what is based in the community.  I'm sorry, so you're saying that C says it needs to be based on the rates in the community, but it could be above the rates as long as it's based on the rates in the community? Yes, your honor, because as this court has typically noted, it's able to be a range of rates. And so if a attorney, for instance, has just a couple years under what the rates have usually said for a different attorney, and the courts have approved that prior rate, the court could go up a few dollars. It could go up maybe even 50 or so, but- Is your position that actually courts should not be doing the load star? They should just be applying the factors in subsection F? Not necessarily, your honor. So they're going to do a load star calculation, right? They're going to decide what the reasonable rate is. So they do all of that up front, right? Yes, your honor. And that includes some of the factors that are in subsection F, like rates prevailing in the community and whether it was protracted or not protracted, right? Isn't that incorporated into the load star calculation? Not entirely, your honor. Well, if the time spent in legal services furnished were excessive considering the nature of the action or the proceeding, which is one of the factors in subsection F, that's also going to be accounted for in the load star calculation, right? Yes, your honor, it is supposed to- So I guess, I mean, I get your point, right? But it does seem like if the city or the board of education is unreasonably protracting, G seems to say, well, you shouldn't do the reductions under subsection F, but those factors seem to also be accounted for in the load star calculation. And if you're not disputing that the court is supposed to do a load star calculation, then what extra work does subsection F and G do? These really end up saying that it's supposed to go back in line with the fee shifting purpose of a more expedient process than what the usual civil rights statutes would say. For instance, we already have the mediation process. We have the resolution. We have the 10 day offer, which is specifically able to cut off the school, or And then this prohibition on rate reductions is able to do the exact reverse and able to cut off the school district on being able to argue that these are unreasonable hours or these are unreasonable rates. But, of course, attorneys are always going to have the obligation ethically to make sure that their rates are reasonable at the time that the services are rendered. This is also going consistently- I'm sorry, so you're saying that what G says is that if there's a finding that the Board of Education has unreasonably protracted, then the Board of Education is not able to argue that the fees are unreasonable? Yes, your honor. So then you're saying that actually F and G do displace the load star calculation. You're saying there should be no load star calculation in cases where there's a finding of unreasonable protraction. Is that right? We believe that the load star calculation would still work in tandem with subsection F. And once subsection G is triggered, then that's when it's displaced. So you're saying that the load star calculation is not an independent obligation of the district court to determine whether the rates are reasonable under B and C. But it is just what's reflected in subsection F. Yes, your honor. And if the state has unreasonably, or the city or state, has unreasonably protracted, then you don't do a load star calculation, you do whatever fees are requested by the attorneys. Yes, your honor. No matter how high they are, no matter what the hourly rate, no matter what the number of hours requested, the district court would be prohibited from adjusting that award if a plaintiff's council came in and said, and say it was clearly and obviously unreasonably protracted by the city for the sake of argument. And council asked for $1,000 an hour for attorneys with five years experience and wanted to bill 250 hours for a two hour administrative hearing. The district court would be unempowered to address that and would say, throw its hands up and say, I'm sorry. I'm required to award whatever fees are claimed by plaintiff's council, no matter whether they're reasonable or not. No, your honor, and specifically because subsection B is still there to say that the district court has the power to award attorney's fees in the first place. Right, so how does the district court determine reasonableness? It uses a variety of factors, right? Not necessarily, your honor. And my point of mentioning subsection B is that that's the subsection that says whether or not the court may award the fees. The district court at that instance is able to say whether or not they are going to award the fees in the first place. So the option would be if the court found them unreasonable to say you get zero. Right. And you would prefer that as an alternative, that if the district court found that the fees requested were unreasonable. That rather than adjusting them, the district court should simply say no. If they were that extraordinarily unreasonable, but that was- It doesn't say extraordinarily unreasonable, it says reasonable. So if the court finds they are not reasonable, it should award none. No, your honor. If the district court is able to see that these are obviously unreasonable fees, that if somebody is coming up and asking for a million dollars an hour. And that there's no possible way that an attorney's ethical obligations could have been met by keeping the fees reduced. Then that's when the district court should be able to come forward and say, okay, under subsection B, I understand that there are all of these statutory purposes, but we're not going to award fees in this instance. Because of what is obviously trying to take advantage of the fee shifting statute. However, if the district court is looking at this and saying, well, it's questionable whether or not these fees might be unreasonable or they may be reasonable. Then that's when the court is supposed to look at subsection G and say, okay, well, this is where we've really seen that the school district was so unreasonable in this that it really doesn't matter. And- So your view of the statute is that the court does some kind of reasonableness analysis, but it shouldn't go that far down. And if there's unreasonable protraction, it should, so there's some request for fees. The court can reduce it to some reasonable level. But if there's a reasonable protraction on the part of the government, then it should go up, but not up necessarily all the way to the request. Is that right? Yes, your honor. And where do you get that from the statute? Just simply the plain language of the statute, your honor. And there have also been cases with the Supreme Court, especially with the Goodyear case, where the justices have come back and there are instances when, and these are usually rare instances, when a other side has been so unreasonable in their heavy, aggressive litigation that all fees from some midpoint onward- Can I just, can I clarify? Right, some midpoint onward like if, so the statute does say that if there's a settlement offer that the parents don't accept unreasonably, then they don't get fees after the point at which they've rejected it. And so as you could suggest, it could work the other way. If there was a point at which the city should have settled and did not settle, then maybe they get, there's no reduction in fees after that point. Right, your honor, and that's usually the way that it would work for both of us. But isn't this just a way we're trying to modify the statute in order to kind of give effect to both sides? I mean, the statute doesn't say, the district court is supposed to reduce the fee request to some, to 0.1, and then if there's a reasonable protraction, it can reduce it only to a more limited extent, right? BNC just say it needs to be reasonable, and then FNG talk about the factors that courts normally conclude in a reasonableness analysis, don't they? I see I'm out of time, may I respond to that? Thank you, your honor. This would basically be that the statute itself was supposed to go for ensuring that the school districts were providing these for parents. This was, as a civil rights statute, directed toward assisting parents and children with disabilities. This wasn't meant to be one-sided. This was supposed to help both sides. And when it really comes down to what Congress was looking at from a parent's perspective, having an entire school year wasted, and in some cases, such as these two and three- So, you don't dispute that when the court is deciding whether the fees are reasonable, it applies the Johnson factors, right, that we've said that courts consider. Do you agree that that's okay, or do you think that that's erroneous for a district court to apply the Johnson factors? It's the manner in which the Johnson factors are applied to, your honor, because if the court is simply coming in and listing off the reputation of an attorney, how long a case was litigated, how many days the hearing took, the number of exhibits, none of that actually discusses what was actually going on at a hearing. It also would- So you have arguments about why they're not properly applying the Johnson factors. But you don't disagree that the court is supposed to do two things. One, it comes and determines whether there's a reasonable rate in accordance with the Johnson factors and does the Lone Star calculation. And only after that does it do the F and G framework, right? It may happen that way, yes, your honor. Okay. Could I ask two small questions? So one is the arguments about unreasonable protraction. Is the city unreasonably protracting half? So is it the cases where the city is contesting the claim and then right on the eve of the hearing says they don't really have a defense, that's unreasonable protraction? In some of those instances, yes, your honor. There are others where the city does not come up with a ten day offer at all, doesn't have a resolution meeting, doesn't do any of the mediations the statute provides for. And then essentially the parent at that point is supposed to assume that this hearing is going to be contested. And then the city comes in on the day of hearing and says, we're not going to put on a case. Or we're only going to put in these couple of exhibits that don't dispute what is actually going on from the parent's side. Right, and then your argument is the district court then says, well, it's not a very complicated case because the government wasn't even contesting it. But you didn't know that until the day of the hearing. So obviously, but the district courts were recognizing that it was legitimate to prepare a case, right, for those cases. Some of them did, your honor. And at the same time, some of them would say, yes, we understand that you weren't able to notice this, but we're still going to say that it's not complicated, it's not complex. And that's really taking a retrospective view of these fee applications. They really need to be looking at this from a prospective viewpoint where- I think I get that. I have just one small question, which is in the case, Board of Education versus CS and SS, right? Post-judgment interest? Yes, your honor. Is there a dispute as to whether the parents are entitled to post-judgment interest? You note that it seems to be mandatory, so shouldn't we just understand a district court's silence on that to be accepting that there is an award of post-judgment interest? It does appear that the silence seems to be a rejection of that. So you think it is a rejection of that? We do believe so. Okay. I have a couple of questions. There are wheels within wheels, and the statute has a number of considerations that operate in tandem. But here we have about a dozen judges in this community. Between them, no doubt had a couple hundred of these cases, and they all seem to agree as to what the prevailing rate in the community is for the services of people in this firm at various levels, from senior partner to paralegal. And the question is, are they all abusing their discretion? And how plausible is it that they're all abusing their discretion? Yes, your honor. The really main factor of all of this is that these judges are listing back the range of rates for what's been awarded in the past. And if the court were to go and trace these back, even though some judges are saying, well, we know that there was an opinion in 21 that said this is the range of rates. And then one cites back to 2019. Really, all of these cases go back to the CD decision in 2018, which traced back to 20- A dozen judges have not, really haven't done their work. They're just mindlessly applying what other judges have done. But isn't that, isn't another way of saying that, that there is a prevailing rate for your, for the various lawyers in the firm, in this community, and that they're applying it? No, your honor. And this is why we've not only brought in our own new declarations and affidavits, but we've also brought in the declarations and affidavits of the entire parents bar, who have been able to submit these across several cases to show the court's familiarity with this. And that the court's familiarity with what the parents bar has been testifying to across so many cases has not been applied. And this also goes- Not to listen to what, or not to adopt the views of a, basically, a bar association of people who do that kind of work. The argument, really, your honor, is that this evidence is being put forward and that the courts are just leaving it alone. They're all of them ignoring the evidence and coming up with an arbitrary set of numbers that happen to be they're not identical, but they're within a pretty narrow range. So they're all just not doing their job. I think that's what you're saying. All of the decisions that we have continuously cite back to the same set of decisions that cite back to the set of 2011 and 2012 decisions. That's what we have, your honor. When one talks about prevailing rates in a community, can a judge reasonably take into consideration that the community in which the firm's offices are located is Auburn, New York? And what's the prevailing rate for a law partner in Auburn? There had never been any evidence put forward about that. And we had also noted that the statute itself says that the rates are supposed to be based on where the proceedings arose. And the proceedings arose in the community of Southern District of New York. But it also is based on what a fee-paying client would pay. Wouldn't a fee-paying client say, you're in Auburn, New York, lower rents, lower salaries, and lower taxes, and I'm not going to pay what a lawyer would reasonably charge in Manhattan? No, your honor. The clients would expect to still be able to have an attorney locally. And if an attorney is still having to come out from Auburn, then part of that consideration is going to be that, well, you do still have to travel down. A lot of those travel costs aren't always listed as being compensable. There are some judges that have given some of the travel costs, and others say that you're not going to get travel at all. And then other judges say, well, we're going to do somewhere in between those decisions. And then it does also still come down to the councils, both locally and from out of district, need to be attracted to this field of litigation to be able to ensure that all of the cases are being taken up. Right now, there are about 30,000 cases that are open at the administrative level going throughout this. And there just simply haven't been enough attorneys to address all of this. We've- Okay, thank you very much, Mr. Kopp. You've reserved time for rebuttal, so we'll hear from you again. But let's turn to the appellee, Ms. Vidaitis. Good morning, may it please the court. Rebecca Viskaitis for the New York City Department of Education. These 14 appeals, which are among the first of several dozen, are simply an attempt to get around this court's consistent guidance regarding the determination of fee awards. This court ruled just a year ago in the SJ case that there was no abuse of discretion in an award of attorney's fees to the Cuddy Law Firm at the low end of the range that was awarded in these cases. And CLF ignores that decision, but there's no reason for a different conclusion in any of the cases at issue here. Both the Supreme Court and this court have repeatedly emphasized that district courts, as your Honor noted, have broad discretion in this area. And the goal in fashioning awards is- Okay, but the district courts have to comply with the statute. So I guess I have this other question about how the statute works, right? So subsection G is captioned, exception to reduction in amount of attorney's fees, and says the provisions of subparagraph F shall not apply to any action or proceeding if the court finds that the state or LEA unreasonably protracted the final resolution of the action or proceeding, or if there was a violation of the section. So the Congress pretty clearly had the intention that if there was unreasonable protraction on the part of the LEA, that there wouldn't be a reduction in fees, right? And yet here we have district courts saying, well, it doesn't matter if it was unreasonably protracted because I have to decide what's reasonable anyway. Doesn't that just write F and G out of the statute? I don't think so, because as your honors were noting, there is still the overarching requirement that fees be reasonable, as stated in subsection B. No, I get that, but that means actually that F and G don't do anything under the statute, right? Do you have a view as to what work F and G are doing? Well, there are other things in subsection F that are not just about the reasonableness of the fee that are about whether the parent's attorney has unreasonably delayed things. But wouldn't that also be accounted for in the Lodestar calculation? So if, in fact, the parent's attorney is spending time on something unreasonably, the district court is going to say, well, that's not a reasonable charge, and a reasonable client wouldn't pay for that, right? So that would be accounted for in the Lodestar, right? F2 is about whether it exceeds the rate prevailing in the community, but if you're charging well above the rate in the community, you're going to reduce the rate as part of the Lodestar. And 3 talks about whether the time spent was excessive concerning the nature of the action or proceedings. So isn't this just stuff that's going to be considered anyway? It largely is, and I think one possibility is that this just is sort of another way of saying what courts have directed, what appellate courts have directed district courts to do, Subsection F is a restatement of what the Lodestar calculation is. I think that would be one way to look at it. Also, if that's true, then wouldn't G be telling us that if there's unreasonable protraction by the state or the LEA, then you don't do a Lodestar calculation? I think that that is too broad of a reading, and as your honors were observing, CLF's proposal really would introduce confusion because it does create these situations there where a firm could come and demand clearly unreasonable fees, and if this really meant that anything that was any sort of delay was- So what do you think the statute envisions? So let's assume there's a case where the state really, it's undisputed, the state has unreasonably protracted. What is the consequence of that for the fees? I think if there was a situation where there was complete unreasonable protraction, that would be considered in the district court's analysis of the Johnson factors and calculation of the Lodestar anyway, and that's- Right, so then you're saying basically that we don't ever apply Subsection F and G, you're saying we just do the Lodestar calculation. I mean, as I said, I think that this is all ultimately getting at the same goal, which is determining a reasonable fee, and I think that the statutory language and the Lodestar calculation aren't necessarily in tension, they're just different ways. But there is some tension, right, because the way you would account for unreasonable protraction in the Lodestar calculation is you would just adjust the fees, right? But Subsection F says you don't do a reduction in the case of unreasonable protraction, right? That's more than what you would do just as part of the Lodestar calculation, isn't it? I suppose yes, but ultimately also this court does not need to resolve that because none of the instances that CLF points to here demonstrate unreasonable protraction on the part of DOD. Well, we do have the district court, you know, in the MH case saying it doesn't matter if they've unreasonably protracted because I would do the same thing anyway. And if, in fact, unreasonable protraction requires a different result, wouldn't that be erroneous? No, because these courts largely did say they said both parts of this analysis. They said that Subsection G doesn't require a reduction in fees and does not apply, but also in any event this was not unreasonable protraction. So they also said there wasn't unreasonable protraction. Yes. And why wasn't there unreasonable protraction? So if the LEA is not meeting administrative deadlines, is purporting to or it's giving the impression that it's contesting the claim and requires the parents to proceed with litigation, but then on the eve of the hearing says, actually, well, it turns out we don't have a defense and we're not defending it at all, doesn't that seem like it's unreasonable protraction? No, Your Honor. And I think that some of this comes down to case-specific situations where some of the things that CLF is pointing to, situations where they're criticizing DOE for not resolving something outright, there was relief that wasn't necessarily easily resolved. That if a parent is seeking solely reimbursement, then that's something that DOE can make an offer on and there can be negotiation. If the parent is seeking only evaluations, as some of these parents were, there's not really anything to negotiate there because either the evaluations are going to happen or they're not. And so these cases don't all neatly fit into that framework of things that can be easily resolved in advance. But there are cases where on the eve of the hearing the city comes in and says, you know, we're not going to contest this claim, right? Sure. So the statute says, you know, it's unreasonable for a parent to reject a settlement offer that's reasonable. I mean, shouldn't it be that whenever the city realizes that it doesn't have a defense and it's going to agree to the claim, it should stop litigation at that point? I think that in these cases DOE did that. And there may have been factors that caused that evaluation to take longer, the evaluation of the claim because there were updated evaluations of the child to be done or because there were continuing discussions. And I'm sure in some cases because of a lack of resources that would cause things to be slower than DOE would ideally prefer. But none of this rises to the level of unreasonable protraction. I think that if- What do you say to your adversary's argument that there are tens of thousands of these cases that have not attracted counsel and that that may be indicative of unreasonably low fees for this kind of very sensitive and important work and that therefore the fact that 10 or 12 judges have more or less arrived at a consensus of what this firm is entitled to get, that may be defective because it doesn't seem to be enough to attract counsel in tens of thousands of cases. I would say that they have not presented any evidence of that scarcity. And I believe that's because that is not something that is actually true in the actual practice of these cases. DOE submitted declarations here attesting to the fact that there are dozens of firms that regularly handle these kinds of cases and the vast majority of them regularly settle for fees in line with what was awarded in these cases. There's simply no actual evidence of scarcity. This is a completely speculative concern. And I think that looking at this and the lack of evidence of that scarcity makes clear that what these cases are really about is about one law firm wanting to be paid higher rates, which is understandable that they would like to try to get the highest rates that they can. But that goes back to the fact that, as Your Honor recognizes, there are 10 judges here across 14 different cases and continuing to make similar rulings in cases today. And I think that that just goes to show that based on their years of experience and expertise in considering fee applications across a wide variety of cases that they have settled on the fact that these rates are reasonable and appropriate. It sounds like they are all citing older cases that award fees, right? They're all citing each other. I mean, do we have a lot of evidence about what the rates actually are being charged in the community? I mean, the statute asks us to look to that. Well, I think they are citing each other, which shows that they are in agreement that these are reasonable rates for these cases. And they're in line with cases for other kinds of civil rights actions as well. The evidence that CLF has- Are they in line with cases in this area of civil rights? Yes. I think based on the evidence that's available, yes. And CLF's evidence that they have put forth has done- Well, is sufficient evidence available to be able to conclude, for judges to conclude, that the consensus they have arrived at is, with respect to this law firm, is consistent with what other law firms get who do similar work? I think, yes. And the district courts have also been able to compare the type of work in these cases to other cases, to the extent that there is a lack of evidence of- Well, the judges certainly have other cases with other law firms. You mean in the IDEA proceedings? Well, we have ten judges here. Their docket of these cases does not consist entirely of cases brought by this law firm. Well, I think most of the cases in the past several years that have been seeking fees in IDEA cases have been brought by this single law firm, and that's part of the issue here, that this is a problem of their own creation, that there is not a large-scale protest here and a large-scale movement. Why is it of their creation? Because other firms that practice in this area in the Southern District are settling for the fees that the district courts have found reasonable in these cases. That's what I was asking. I thought you said that all the cases are brought by this law firm and that there's no set of comparators. The federal actions are brought by this law firm. There are many other firms that handle the administrative proceedings and then settle before it gets to this point, certainly well before it gets to the appellate point. Well, most cases do settle. Yes. And those cases are settling at hourly rates that are in the $350 to $400 range that are exactly in line with what district courts have awarded the Cuddy Law Firm. So I think that there is not a concern that there— Is there an argument that unreasonable protraction can be a product of insufficient staffing in the Department of Education in taking care of these cases and that an increment in fees would stimulate the government to assigning more and better resources to resolving these cases? It also might make it more difficult for the government to budget for increased staff. Returning to the unreasonable protraction point for a moment, if I can, I did want to say that if this court is inclined to consider CLF's interpretation of the statute, I think that the idea that unreasonable protraction would serve as a bar to reducing unreasonable fees would indicate that the bar for unreasonable protraction would need to be very high. So can I ask what that is? So you said a moment ago that nothing here rises to the level of unreasonable protraction. So what would the city have to do—I know you're not admitting that it happens here, but what would unreasonable protraction look like? I'm not sure, and I think it would be something that we would have to see a case, but I think that some sort of intentional—some evidence of intentional delay, of obstructing the process in some meaningful way so that a child did not end up receiving services that they were entitled to or did not end up—or that an IEP couldn't be created. And none of the cases here have any indication that— Well, there's some indication, right? I mean, you have cases where the child is not getting services while the proceeding is pending, right? And then you have, like, a year or however long it takes to get to a proceeding, and then on the eve of the proceeding, the state or the city comes in and says, actually, we don't have any defense against the claim the child is entitled to services. So that's been, like, a long delay in getting the child services, right? So I don't think that there are examples of actual delay like that. Not in many of these cases. These were children who already had an IEP, were already receiving services, and then these were subsequent school years that the issues that were being addressed were about the exact payment structure for services or the exact evaluations that were going to take place in terms of creating the IEP for the following year. These were not cases where students were starting from scratch and were not receiving any services in the meantime. So in the MH case, why did it take the DOE six months to pay the invoices for the attentive behavior? I can't say exactly. I think that that was just working through the process. However, the MH case, I think that that is a good example of the kind of unnecessary work that CLF sometimes puts into these cases. Ultimately, the invoices were paid. By the time this was being litigated in district court, there was no need to issue the relief that CLF was requesting because DOE at that point was in full compliance. But during that six-month period, how did the parents know that the department is going to pay the invoices? Well, crucially, there was no indication that the child was not receiving services. So I think that what would be important to the parents is that the child was receiving the services to which they were entitled, and that was still taking place. Well, that's because the provider was providing the services without getting paid, but not all providers would do that. So the provider was clearly willing to accept that DOE was in the process of paying these invoices. Okay. Can I ask about the case I asked about before, which is Board of Education versus CS and SS? It's the case where there's no- Your Honor, we are not a party to that case. Oh, you're not? We are not. Okay. Well, then I'll take that under advisement. Is there a dispute over whether prejudgment interest is authorized under the statute? Well, first of all, I would note that this issue is largely unpreserved in these cases. Only two of the appellants offered any argument to support a request for prejudgment interest. But also, no, this is not a concern. The appellants have made no showing that prejudgment interest was required to adequately compensate them. Right. But there's no dispute that it could be awarded, right? I think that's a question, but it's not something that this court needs to address. Because that's my question. Is there confusion as to whether it's authorized or not? I don't think there's confusion. I think that courts here didn't believe that there was any need to address it because they were considering any delay in determining the reasonable awards that they were issuing. So you're saying the protraction would be in deciding the case, not in paying for the services that parents are entitled to get? You seem to be saying that the protraction is in the litigation, in arriving at a determination. But protraction doesn't have anything to do with whether the money actually goes out. In terms of the unreasonable protraction contemplated by the statute, I think that's right, that the unreasonable protraction is up to the point that a determination is reached. What good is the determination if there's no payment forthcoming? I think that even if protraction in payment would be a factor, again, I think that what would be important to look at is whether there was so much delay that there was a threat of the child not receiving services, that there was a threat- You said that this issue of interest is presented in two of these cases. Yes. So what's the answer? Well, in those cases, that this was another thing that the district courts appropriately exercised their discretion in determining that there was no need to even consider prejudgment interest because the courts had already taken delay into account in determining the reasonable award. So you're saying the fact that a judge doesn't mention something does not support a presumption that the judge didn't consider it. In fact, it usually supports the opposite presumption that judges are deemed to consider the law. I think so, and here in NGB, which is- Did the parties raise this in those cases and tell the judge you have to consider this? They did put forth argument in those two cases. Those were the only two, and in NGB, the court specifically explained that it was not awarding prejudgment interest because it had already taken- So the fact that the judge did not do it means what? That the judge didn't consider it or that the judge- Or that we presume the judge considered the arguments presented and the law as written and arrived at a conclusion within those parameters. In this case, given the extreme detail and thoroughness of these district court decisions, I think it's clearly the latter. But in the case of post-judgment interest, you don't dispute that that's mandatory under the statute. Right. So if there were a case, I know that you're not a party to that one, but if there were a case where the court doesn't mention post-judgment interest, should it be understood to be included since the statute makes it mandatory? I think yes, since that's not an issue in any of these cases. I admit that I have not thought deeply about it, but I think that's right. Okay. I see that my time is up, but I would just note that we asked this court to affirm all 14 district court decisions that are in line with this court's affirmance last year in SJ. And we asked this court to do so with an opinion that makes clear that the rates and awards in this range are reasonable and that it's appropriate to gradually increase rates over time, but that there's nothing to be gained from continuing to litigate this well-plowed acreage in district court and in this court. Thank you. Thank you very much, Ms. Gatiss. We'll turn back to Mr. Kopp on rebuttal. Thank you, Your Honor. I would like to note first that the SJ decision was supposed to be a summary order without precedential effect, specifically around the time that the case management order bringing all these matters into tandem was being issued. And one point that opposing counsel mentions are several cases being brought by the same firm. However, this court would be able to take judicial notice that there have, in fact, been several recent decisions for other firms. And in one of the more recent ones, SK, the court there had actually noted that counsel hadn't brought a fee action since 2014. And this is going back to show that in several of these settlements that several parties are having with the DOE, the DOE is coming back and relying on the types of rates that are being given here and the types of evidence that are not being reviewed and essentially saying that, okay, now local law firms need to come in line with what these courts have said in SJ and now what they've been saying in these more recent decisions. The primary factor that we need to look at is back at Farbacko, which said that, yes, the courts can consider prior awards, but they can't just rely on them. And Farbacko even looked at one other case. I believe it was TM. They ended up saying- Is that the area here you think the district courts are just looking at prior precedence? Yes, Your Honor. And the district courts are also doing an analysis as to the seriousness of the claims and the complexity of the case, right? Well, and that was the Millia case where this court came back and said that the district courts can't simply recite what the factors are, can't simply recite what the facts may be for that, and then award something completely different. The analysis still needs to be considered in light of what the evidence is in the record. And other circuits have been recently coming back with decisions. The Third Circuit came back with a decision earlier this month saying that the courts still need to go back and address the evidence that's actually in the record. So I just want to get at one. If we were to write an opinion that tried to provide some clarity in this area, what are the legal errors the district courts committed? Is it a misinterpretation of the statute, which you were arguing before? Is it this issue that the evidence in the record didn't support the fee determination? Is there a global error, or do you think it's just case by case, every court having to get it wrong? We do believe, Your Honor, that there are multiple abuses of discretion here. It does include the not reviewing the statute in the appropriate manner. It also includes the not reviewing the evidence that was brought before the courts. And in several of these instances, J.R. was one particular instance where the court came back and said that we're just going to use what R.G. said. And there are several of these that say, well, I note that other courts have applied a 20% to 50% reduction in the billable hours. And so I'm just going to pick something within that 20% to 50% reduction range. And then the court ends up doing that. But you're not seeing the types of enumerated reasons for making such percentage reductions, such as vagueness. It would be appropriate if the cases were similar, right? No, Your Honor. Would that be appropriate? If the court were able to say that they've reviewed the timesheets and they're seeing similar errors throughout the timesheets that have come through each time. However, that's not the case. Oh, I see what you're saying. You're saying a reduction in the number of hours, you can't just extrapolate from one case to the other because it's not clear that the hours are inflated in the same way. Yes. Let me ask you just a couple of small questions on the unreasonable protraction. Yes, Your Honor. Factually, the arguments you've made about that have to do with the board's conduct in the administrative process, right? Waiting to the last minute, showing up at the hearing and saying, oops, we were wrong, right? That's the unreasonable protraction. It's in the administrative process, right? Yes, Your Honor. So why would, if we accept your approach that you can't assess the reasonableness if there's been unreasonable protraction, wouldn't that be limited to the fees demanded for the administrative process? Whereas most of these cases, say two-thirds of the bill from plaintiff's counsel is for the federal suit. Why would unreasonable protraction of the administrative process deprive the district court of the authority and discretion to evaluate the reasonableness of the fees incurred in the federal case in front of him or her? The statute does say proceeding or action, Your Honor, so we do believe that there is that split where the court can say, okay, unreasonable protraction in the proceeding or there was unreasonable protraction in the action. But you haven't made any argument factually about any matter that I remember anyway. Tell me if I'm wrong. There are 15 of them, so I might have missed it. That there was unreasonable protraction of the federal litigation as opposed to the administrative proceeding. I believe there may have been one or two, Your Honor, where we did come back and say that because the DOE was taking so long with trying to come up with an offer and that we had already had. But they don't have to offer settlement once you get to federal court, right? They don't have to, Your Honor, but if that's the basis for saying that they want to have so many extensions, then they need to actually be making those investigations in good faith and making those offers. So arguably, if there are, in those one or two, maybe the bar on reductions would apply to all of it. But even under your theory, the district courts would be entitled to reduce the fees demanded for the civil action, the federal court action, even in the cases where the only unreasonable protraction occurred in the administrative process. Yes, Your Honor, and I believe that was the KL case where we did have the administrative fees and then the court came back and said that they were not going to approve the district court fees. Thank you. One other point, opposing counsel had mentioned that there didn't seem to be confusion on the prejudgment interest. In the MH case, we had been discussing the Loughran case from this court, which had basically stated that if the rates are increasing over time, that you would go with the current rates to make up for any delay at the beginning of representation. The confusion here, the district court did acknowledge, was that if you have the same consistent rates, which we did throughout the representation on the cases where we were requesting prejudgment interest, is that the courts should be coming back and saying, OK, prejudgment interest should be permissible here because in this instance, applying current rates isn't going to make up for the beginning of the representation the way that it would if the rates had been increasing from year to year with counsel. Yeah, but is there a dispute as to whether a district court could do that? I understand district courts sometimes decide to do it or not to do it, but too many district courts say, I lack the authority to award prejudgment interest. I believe the district court from MH, especially when we came back for subsequent cases, did still say it was questionable before the Second Circuit whether or not a district court would be able to do this. Other district courts have said, we're not entirely sure, but assuming that we have discretion, we're going to deny it. OK, thank you. Thank you. Thank you very much, Mr. Kopp. The case is submitted.